# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NORDOCK INC.,**

      **Plaintiff-Counterclaim-Defendant,**

v.

      Case No. 11-C-118

**SYSTEMS INC.,**

      **Defendant-Counterclaimant.**

# DECISION AND ORDER

This Decision and Order addresses the motions *in limine* filed by the Plaintiff and the Counterclaim-Defendant, Nordock Inc., ("Nordock") and the Defendant-Counterclaimant, Systems Inc. ("Systems"), rivals in the loading dock device industry. Also addressed is Nordock's motion to seal.

This action involves claims and counterclaims regarding Nordock's design patent, United States Design Patent Number D 579,754 (the "'754 patent") and Nordock's unfair competition claims. Familiarity with the basic facts is presumed, and therefore minimal factual background is provided. Regional circuit law applies to evidentiary rulings in patent cases. *See Pozen Inc. v. Par Pharm., Inc.,* 696 F.3d 1151, 1161 (Fed. Cir. 2012).

A motion *in limine* is a motion "at the outset" or one made "preliminarily." *Black's Law Dictionary,* 803 (8th ed. 2004). Although not explicitly authorized by the Federal Rules of Evidence, *in limine* rulings have developed pursuant to the inherent authority of district courts to manage the course of trials. *Luce v. United States,* 469 U.S. 38, 41 n.4 (1984). Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Regardless of a court's initial ruling on a motion *in limine*, the court may adjust a motion *in limine* during the course of a trial. *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce,* 469 U.S. at 41-42). *See also, Luce,* 469 U.S. at 41-42 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). In addition, if the *in limine* procedural environment makes it too difficult to evaluate an evidentiary issue, it is appropriate to defer ruling until trial. *See Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997)(delaying until trial may afford the judge a better opportunity to estimate the evidence's impact on the jury).

**Motion in Limine to Exclude the Testimony of Norbert Hahn**

Nordock requests an order exclude the testimony of Norbert Hahn ("Hahn") (ECF No. 129). Citing Rule 403 of the Federal Rules of Evidence, Nordock asserts that Hahn's recollection of events that took place over 20 years ago is so unreliable that it should

2

be excluded because it will not assist the jury and presents a substantial danger of confusing the jury.

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403 requires the Court to balance the probative value of the evidence at issue against any potential harm its admission might cause. *United States v. Taylor,* 701 F.3d 1166, 1172 (7th Cir. 2012). Rule 601 of the Federal Rules of Evidence provides that every person is competent to be a witness.

At trial, Systems will be calling Hahn, who has 38 years in the loading dock industry, as a fact witness. Although Hahn has been deposed, neither Nordock nor this Court know the subjects about which Hahn will be called to testify. The pretrial context provides insufficient context to evaluate the admissibility of Hahn's testimony. *See Jonasson,* 115 F.3d at 440. At this juncture of the proceedings, Nordock's motion to exclude Hahn's testimony is denied.

**Motion in Limine to Establish the Priority Date of the '754 Design Patent**

Nordock seeks an order establishing a December 23, 2002, priority date for the '754 design patent. (ECF No. 131.) Systems contends that the priority date is a contested factual issue that must be determined by the jury.

3

Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed. *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010). Because the underlying facts are contested, the Court cannot rule as a matter of law on the issue. Nordock's motion to establish a priority date is denied.

**Motion in Limine for an Order that the America Invents Act ("AIA") Does Not Apply**

Nordock requests a ruling that the America Invents Act ("AIA") does not apply to this case and must not be presented to the jury at trial. (ECF No. 133.) It maintains that, because the '754 Design Patent was filed May 31, 2007, and issued November 4, 2008, the AIA does not apply to it. Systems contends the motion is premature or irrelevant because Nordock has not identified any evidence that would be affected by its motion or any issue that may arise at trial.

Section 35 of the AIA provides:

> Except as otherwise provided in this Act, the provisions of this Act shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any patent issued on or after that effective date.

Leahy-Smith America Invents Act, 112 Pub. L. No. 112-29, § 35, 125 Stat. 284 (2011). The AIA was enacted on September 16, 2011, and unless otherwise provided the provisions of AIA took effect on September 16, 2012. *See e.g., Flo Healthcare Solutions, LLC v. Kappos,* 697 F.3d 1367, 1370 n.4 (Fed. Cir. 2012).

Whether a particular portion of the AIA governs any of the facts or legal issues in this action is an issue-by-issue question. However, at this time, there is no indication that

4

the AIA will be relevant to any issue at trial. Therefore, the motion is granted, without prejudice. If Systems believes any portion of the AIA is applicable at trial, it should bring the matter to the attention of Nordock and the Court.

**Motion in Limine to Preclude Systems from Using Asserted Cost Savings to Attempt to Show Invalidity**

Nordock seeks an order precluding Systems from using asserted cost savings to attempt to show invalidity at trial. (ECF No. 135.) Nordock states the motion is conditioned on the Court's denial of Nordock's motion to compel the production of the Bero report with post-October 2011 profit information and the production of timely requested financial information.

On February 19, 2013, the Court granted Nordock's motion to compel as to the production of timely requested financial information and denied it to the remainder of the motion. (*See* ECF No. 137.) Systems states it has produced all the financial documents upon which Systems' damages expert relied and it will be immediately producing the updated financial data reflecting Systems' ongoing sales.

Based on the foregoing, Nordock has not presented a basis to exclude Systems' evidence of cost savings. The motion is denied without prejudice.

**Motion in Limine to Exclude "Undated" and "Unpublished" References from Entry into Evidence as Asserted "Prior Art" References at Trial**

Nordock seeks to exclude "undated" and "unpublished" references from entry into evidence as asserted "prior art" references at trial. (ECF No. 141). Nordock refers to the

Crawford Door N.V. ("Crawford") brochure and Combursa drawings,[1] and asserts they should be excluded as evidence of "prior art" references applicable to the '754 Design Patent at trial.

Systems indicates that the evidence is relevant to its defense of the unfair competition claims and it will be able to establish a proper foundation for the two documents. However, it does not contend that either document is admissible as prior art.

Because insufficient evidence has been presented regarding the dates of the two publications, they are not admissible as prior art and Nordock's motion to exclude "undated" and "unpublished" references from evidence as asserted "prior art" references is granted. This ruling does not bar the introduction of the documents as evidence regarding the unfair competition claims.

**Motion in Limine to Preclude Testimony of Systems' Newly Added Lay Witnesses**

Nordock seeks to exclude the testimony of Systems' newly added lay witnesses. (ECF No. 144.) Nordock maintains that Systems added eight new lay witnesses for the first time in its final pretrial report. These witnesses include five European residents, Brian Fulton ("Fulton"), and two Systems employees. Nordock maintains that Systems failed to timely disclose these witnesses as required by the Court's July 21, 2011, Scheduling Order, denying Nordock the opportunity to depose them.

Systems responds that its final pretrial report was filed prior to the issuance of the Court's February 26, 2013, claim construction and summary judgment decision, and in the

---

[1] These documents were discussed at pages 42 through 45 of the Court's February 26, 2013, Decision and Order. (*See* ECF No. 143.)

wake of those rulings it intends to call only two of those eight witnesses – Mark Lobel ("Lobel"), and Steve Robbins ("Robbins"). Systems states that both witnesses were disclosed on October 11, 2011, in response Nordock's second interrogatory requesting the identification of persons involved in developing the lip securing mechanism for each of Systems' accused dock levelers.

With respect to Lobel and Robbins, Systems did not supplement its Rule 26(b)(1) disclosures and it did not provide any indication as to the expected testimony of either witnesses as required by Rule 26. Noncompliance with Rule 26(a) generally precludes testimony of undisclosed witnesses. Systems does not assert that the omission is either harmless or justified. Systems waited until too long to identify the additional lay witnesses and has not offered any justification or established that its non-disclosure is harmless.

Nordock has established that the eight lay witnesses were not previously disclosed as required by Rule 26(b)(1) and, therefore, its motion is granted.

**Motion to Seal Profit Data for Systems' Accused Levelers in Nordock's Opposition to Systems' Motion to Strike Nordock Experts, and Financial Data in Exhibit A**

Pursuant to General Local Rule 79(d), Nordock filed a motion to seal profit data for Systems' accused levelers on page four of its Nordock's opposition to Systems' motion to strike Nordock experts, and financial data in exhibit A thereto. (ECF No. 148.) Having reviewed the relevant papers, the Court finds good cause to seal portions of those papers because they contain the parties' sensitive financial information not generally available to the public. *See County Materials Corp. v. Allan Block Corp.,* 502 F.3d 730, 740 (7th Cir. 2007).

7

The sealing order will expressly provide that any party and any interested member of the public may challenge the sealing of those papers. *Id*.

## Systems' Motions in Limine

By its motions in limine (ECF No. 140), Systems seeks an order barring Nordock from offering any expert testimony, opinion, or evidence on Nordock's unfair competition claims, and specifically as to secondary meaning. Systems also asserts that pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Court should exclude both expert reports and any testimony by Prof. Stan V. Smith ("Smith") regarding Nordock's purported damages in this action.

### *Technical Expert Testimony on Non-Patent Issues*

Systems maintains that Nordock failed to identify any technical expert or to serve an expert report on any non-patent issues and should be barred from offering any expert evidence regarding non-patent issues. Nordock concedes the motion as to its technical expert, Steven Carl Visser ("Visser"), not testifying as to secondary meaning. However, it asserts that Visser should be allowed regarding common elements to design patent and product configuration trade dress validity and infringement, such as the ornamental functional dichotomy and the distinctiveness of a design relative to existing and prior art designs.

Under Rule 26(a)(2), a party that intends to rely upon an expert witness's testimony is required to furnish by a date set by the district court a report containing, among other information, "a complete statement of all opinions" the retained expert will provide, "and

8

the basis and reasons for them." *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (citing Fed. R. Civ. P. 26(a)(2)(B)(I), (a)(2)(C)). Failure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to introduce the expert witness's testimony as "evidence on a motion, at a hearing, or at a trial." *Id*. (citing Fed. R. Civ. P. 37(c)(1)). This sanction is " 'automatic and mandatory' " unless the offending party can establish " 'that its violation of Rule 26(a)(2) was either justified or harmless.'" *Id.*

The parties' combined joint status report and discovery plan states "The parties agree that *initial [e]xpert reports on matters for which the parties bear the burden of proof* will be served by June 20, 2012, that rebuttal expert reports shall be served by July 20, 2012, and that expert discovery shall be completed by August 20, 2012." (emphasis added.) (ECF No. 12.) While there are overlapping elements of trade dress and patent infringement, Nordock did not disclose any expert on trade dress. Nordock vigorously emphasized that point at pages two, three, and eleven of its memorandum in support of its motion to strike Brookman as an expert witness on trade dress and unfair competition. (ECF No. 53.) Nordock does not assert that the omission is either harmless or justified. Nordock apparently made a tactical decision and it is too close to trial to change that approach. Therefore, Systems' motion to exclude any technical expert evidence on behalf of Nordock on any non-patent issues is granted.

9

*Damages Expert Testimony*

Systems asserts that Smith's damages opinion and report must be excluded as being far-fetched, and based on faulty factual and legal analysis that render it "fatally" unreliable. Nordock states that Systems' criticisms of the Smith report on Nordock's lost profits are without merit, and notes that Systems' motion does not directly address Smith's damages calculations under 35 U.S.C. § 289, or Smith's November 5, 2012, supplemental report.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *Daubert*, 509 U.S. at 588. Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Regional circuit law governs the decision whether to admit expert testimony in a patent case. *See Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

10

The Court engages in a three-step analysis for determining whether the expert testimony is both relevant and reliable: "[T]he witness must be qualified 'as an expert by knowledge, skill, experience, training, or education,' Fed. R. Evid. 702; the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert,* 509 U.S. at 592-93, . . . ; and the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702." *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007).

In determining reliability, courts are to consider the following non-exhaustive list of guideposts: "(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community." *Ervin*, 492 F.3d at 904 (citing *Daubert,* 509 U.S. at 593-94). "The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the *Daubert* standard," by the preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). The weight and credibility of an expert's testimony may be challenged through "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596.

Although Smith's qualifications are not challenged, the Court notes Smith has a Bachelor's Degree from Cornell University, and a Master's Degree and a Ph.D. in Economics from the University of Chicago. (June 12, 2012, Smith Report, 1.) (ECF No. 86-

11

4.) He has worked as an economic and financial consultant since 1972. His experience included authoring the first textbook on economic damages; creating and teaching the first course in forensic economics nationwide as an adjunct professor at DePaul University in Chicago; performing economic loss analysis since the early 1980s in several thousand cases throughout the county, including business valuation, financial analysis, antitrust, contract losses, class actions, employment discrimination, and intellectual property valuations including evaluations of reasonable royalty. The Court concludes Smith has specialized training and experience as an economist to enable him to assist the jury on the issue of damages in this action.

Next, the Court must consider whether the methodology underlying Smith's expert reports of June 20, and November 5, 2012, is reliable. Smith indicates his opinions are in accordance with the generally accepted standards within the field of economics and are expressed to a reasonable degree of economic certainty. He also maintains that it is reasonable for experts in the field of economics to rely on the type of materials that he has in this case. Thus, the Court concludes that, in general, Smith's methodology is reliable.

The next question is whether Smith's reports and testimony will assist the trier of fact in understanding evidence or in determining a fact in issue. In a patent infringement action, a plaintiff may recover "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2006). The statute

12

authorizes two categories of infringement compensation: lost profits and reasonable royalty damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Damages for design patent infringement may include lost profits, a reasonable royalty, or infringer's profits. *See* 35 U.S.C. § 289. An expert's damages theory must be based on "sound economic and factual predicates." *LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 67 (Fed. Cir. 2012)(quoting *Riles v. Shell Exploration & Prod. Co.,* 298 F.3d 1302, 1311 (Fed. Cir. 2002)); *IP Innovation LLC v. Red Hat, Inc.,* 705 F. Supp. 2d 687, 689-91 (E.D. Tex. 2010) (rejecting damage expert's report because he relied upon irrelevant unreliable evidence and failed to account for economic realities). In any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature. *LaserDynamics, Inc.,* 694 F.3d at 67-68.

*Lost Profits*

Systems states that Smith first analyzes the apparent value of gross revenue that Nordock would have realized if it had sold the same number of Nordock dock levelers as Systems sold of Systems' dock levelers and that he did not conduct the requisite "but for" analysis required when calculating lost profits damages. *See Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer.") Nordock can establish this "but for" causation by proving:

13

(1) a demand for the patented product; (2) the absence of acceptable noninfringing substitutes; (3) the manufacturing and marketing capacity to exploit the demand; and (4) the amount of profit it would have made absent System's infringement. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978). The "*Panduit* test" is a useful, but non-exclusive way for a patent holder to establish entitlement to lost profits damages. *Rite-Hite,* 56 F.3d at 1545.

Smith's report began by calculating loss sales revenue. Because Systems had not provided sales revenue data from the infringing models, (*see* Smith Report, 4), Smith used the number of dock levelers sold by Systems and the revenue data provided by Nordock for comparable models. Calculating lost sales revenue was the first step in Smith's two-part analysis, the second portion of that section addresses lost profits. The "but for" element of Smith's analysis is added at pages four and five of his November 5, 2012, supplemental report. (ECF No. 147-3.) Smith's supplemental report also adjusts his lost profits opinion based on information Systems disclosed in the report of its damages expert, Richard Bero.

Systems states that Smith never addressed the impact of non-infringing alternatives on his lost profits analysis, and that Smith's opinion regarding price erosion[2] is so devoid of actual analysis that it can "barely be believed." Such concerns are more properly

---

[2] To recover price erosion damages, a patent-holder must show that the infringing conduct affected retail prices. *See Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.,* 246 F.3d 1336, 1357 (Fed. Cir. 2001) (stating that to recover price erosion damages, a patent-holder must show that "'but-for infringement, it would have sold its product at higher prices"). "A patentee's price erosion theory must account for the nature, or definition, of the market, similarities between any benchmark market and the market in which price erosion is alleged, and the effect of the hypothetically increased price on the likely number of sales at that price in that market." *Id.*

14

viewed as addressing the weight of Smith's anticipated testimony rather than its admissibility. The Court's role is not to determine whether an expert's testimony is correct, but only whether it falls "outside the range where experts might reasonably differ." *Daubert,* 509 U.S. at 596. "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*

Systems also states that Smith's calculation of additional damages based on "loss of marginal profit from the sale of accessory items that could have been made by Nordock if not for Systems' infringement," Smith June 20, 2012, Report at 8, and was rejected in *Rite-Hite Corp.,* 56 F.3d at 1550.

Systems overstates the *Rite-Hite* holding. In *Rite-Hite*, 56 F.3d at 1550-51, lost profits were awarded for the patentee's lost sales of truck restraints, a device which holds a vehicle to a loading dock, (even though protected only under an unasserted patent), and lost profits were denied on "convoyed" sales of a loading dock leveler. *King Instruments Corp. v. Perego,* 65 F.3d 941, 951 (Fed. Cir. 1995), states that when a patent holder seeks damages on an entire machine where its patent covers only a patented component or damages for lost sales of unpatented goods sold along with a patented device ("convoyed" sales), the patent holder must satisfy the entire market value rule, requiring that the patent holder prove that the patent-related feature is the basis for customer demand for the unpatented parts to which it seeks to extend its damages. *Id*. In *Rite-Hite*, the court reaffirmed the viability of the entire

15

market value rule and imposed a further limitation that "convoyed" sales must bear a functional relationship with the patented goods. *Id*.

*Rite-Hite* is likely to preclude Nordock from recovering any losses on lost profits from truck restraints. It may also preclude claims of lost profits on door seals and shelters. However, disposition of those issues are dependant on factual issues that will be resolved at trial. Thus, at this juncture. it would be premature to decide whether Smith may testify as to loss of marginal profit from the sale of accessories

. *Reasonable Royalties*

"'[A] reasonable royalty analysis requires a court to hypothesize, not to speculate. . . . [T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place.'" *Laser Dynamics, Inc.,* 694 F.3d at 67 (quoting *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 869 (Fed. Cir. 2010)). By statute, reasonable royalty damages are deemed the minimum amount of infringement damages "adequate to compensate for the infringement." *Id.* (citing 35 U.S.C. § 284). Such damages must be awarded "for the use made of the invention by the infringer." *Id.*

"A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 868 (Fed. Cir. 2010). "The hypothetical negotiation tries, as best as possible, to recreate the ex ante licensing negotiation scenario and to describe the resulting agreement. In other words, if infringement had not occurred, *willing parties* would have executed a license

16

agreement specifying a certain royalty payment scheme." *Lucent Techs., Inc.*, 580 F.3d at 1325. (Emphasis added.) To determine a reasonably royalty, courts apply an "unprioritized and often overlapping," *ResQNet.com,* 594 F.3d at 869, list of fifteen relevant factors found in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). A reasonable royalty should be based upon the amount that a willing licensor and a willing licensee would have agreed upon during a hypothetical negotiation at the time the infringement began, if both parties had been reasonably and voluntarily trying to reach an agreement. 318 F.Supp. at 1120.

Systems states that Smith's assertion that "my opinion of a reasonable royalty on sales of dock levelers would be 100 percent of Nordock's lost sales as calculated above," (citing Smith Report, 11), is incredible and should be sufficient to disqualify Smith as an expert. In so contending, Systems states even using a 25% royalty rate is generally thought to be unreasonable in view of recent Supreme Court decisions, citing *LaserDynamics*, 694 F.3d at 69 (quoting *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1318 (Fed. Cir. 2011)). (The use of 25% royalty rate fails to pass muster under *Daubert*).

Smith cites the *Georgia Pacific* factors, generally used to evaluate reasonable royalties, and states he relies on factors four through eight. However, Smith states that "the patents owned by Nordock provide valuable product differentiation in the market, so Nordock management *would never have been willing* to license its patents." (Smith June 20, 2012, Report, 11.) (Emphasis added.) A reasonable royalty requires willing parties and a balancing

17

of their interests. Smith's reliance on the 100% royalty figure does not reflect Nordock being a willing party or that he engaged in any balancing of the parties' interests. His opinion as to the "reasonable royalty" is unreliable and excluded under *Daubert* and Rule 702. *See id.*

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Nordock's motion for an order precluding Hahn's testimony (ECF No. 129) is **DENIED**;

Nordock's motion for an order establishing the December 23, 2002, priority date of the '754 design patent (ECF No. 131) is **DENIED**;

Nordock's motion for a ruling that the America Invents Act does not apply to this case and must not be presented to the jury at trial (ECF No. 133) is **GRANTED**;

Nordock's motion for an order precluding Systems from using asserted cost savings to attempt to show invalidity at trial (ECF No. 135) is **DENIED**;

Nordock's motion to exclude "undated" and "unpublished" references from entry into evidence as asserted "prior art" references at trial (ECF No. 141) is **GRANTED** and this ruling does not bar the introduction of the documents as evidence regarding the unfair competition claims;

Nordock's motion to exclude undisclosed lay witness (ECF No. 144) is **GRANTED**;

18

Nordock's motion to seal (ECF No. 148) profit data for Systems' accused levelers on page four of its Nordock's opposition to Systems' motion to strike Nordock experts, and financial data in exhibit A thereto is **GRANTED** and any party and any interested member of the public may challenge the sealing of those papers;

Systems' motions in limine (ECF No. 140), as to an order barring Nordock from offering any technical expert testimony, opinion, or evidence on its unfair competition claims is **GRANTED**; and as to an order barring Smith's reports and testimony is **GRANTED** with respect to reasonable royalties and **DENIED** in all other respects.

At trial, if a party believes evidence is being introduced in violation of these rulings, the party must object at that time.

Dated at Milwaukee, Wisconsin this  13th  day of March, 2013.

**BY THE COURT**

_____
**Hon. Rudolph T. Randa**
**U.S. District Judge**

19