**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

NORDOCK, INC.,

      Plaintiff/Counterclaim-Defendant,

      v.                                           Case No. 11-C-118

SYSTEMS, INC.,

      Defendant/Counterclaimant.

## DECISION AND ORDER

On March 27, 2013, a jury returned a special verdict finding that Defendant Systems, Inc. ("Systems") infringed on Plaintiff Nordock, Inc.'s ("Nordock") U.S. Design Patent Number D579,754 (the "'754 Patent") for a lip, lug, and hinge plate for dock levelers, with respect to Systems' hydraulic dock levelers (the "LHP" and "LHD" levelers). The jury awarded Nordock $46,825 as a reasonable royalty for the sale of the infringing LHP and LHD levelers. The jury also found that Systems' mechanical dock levelers (the "LMP" and "LMD" levelers) did not infringe on Nordock's patent. Both parties filed motions for amendment of the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (ECF Nos. 179 & 180) and motions for orders to show cause (ECF Nos. 195 & 199). The motions are addressed herein.

### Rule 59(e) Standard

The Federal Court of Appeals applies regional circuit law in reviewing the denial of a motion for a new trial. *Silicon Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d

784, 798 (Fed. Cir. 2010). To prevail on a Rule 59(e) motion, "a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.,* 698 F.3d 587, 598 (7th Cir. 2012) (internal quotation marks omitted). The Seventh Circuit has defined "manifest error" as "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

A Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.,* 733 F.3d 761, 770 (7th Cir. 2013). In other words, Rule 59(e) "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996).

Rule 59(e) permits a court to amend a judgment. However, it is not a proper vehicle through which to amend the answers provided by a jury on a verdict form because the verdict form is not part of the judgment entered by the Clerk of Court. *See Frazier v. Boyle,* 206 F.R.D. 480, 491-92 (E.D. Wis. 2002).

"Rule 59(a), in a bit of a circular way, allows new trials in cases where new trials have been traditionally allowed at law." *ABM Mktg., Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 543 (7th Cir. 2003) (citing Fed. R. Civ. P. 59(a)). A "motion for a new trial should succeed only if the verdict is against the manifest weight of the

evidence." *Id.* at 545 (quotation and citation omitted); *see also Aero Prods. Int'l, Inc. v. Intex Recreation Corp.,* 466 F.3d 1000, 1016-17 (Fed. Cir. 2006) ("In the Seventh Circuit, a trial court may grant a new trial 'where the verdict is against the clear weight of the evidence,' while the court's ruling on a motion for a new trial is reversed only where there is a clear abuse of discretion.") (citation omitted).

To satisfy this standard, the movant must demonstrate that no rational jury could have rendered a verdict against it. *See King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). When making this evaluation, the Court views the evidence in a light most favorable to the non-movant and cannot re-weigh the evidence or make credibility determinations. *Id*. The Court will sustain the verdict where a reasonable basis exists to support the jury's verdict. *Id.* "A new trial may be granted only if the jury's verdict is against the manifest weight of the evidence," *id.*, or if the trial was "unfair to the moving party." *Miksis v. Howard,* 106 F.3d 754, 757 (7th Cir. 1997).

### Systems

Systems seeks amendment of the judgment contending that no evidence was presented at trial regarding its accused 6½-foot dock levelers and therefore the jury's finding of infringement as to those dock levelers is unsupported by any evidence and must be discounted.

Having considered the testimony and evidence submitted at trial, the Court denies Systems' motion because, viewed in the light most favorable to Nordock, the trial testimony and exhibits support the jury's finding that Systems' 6-, 6½-, and 7-foot

wide LHP/LHD levelers infringed Nordock's '754 Patent.

Nordock's '754 Patent pertains to the "front end" of a dock leveler. (Trial Exs. 18, 35, 36 and 85.) The jury was shown views of the front end of Systems' 6- and 7-foot wide LHP/LHD levelers and compared those views to the corresponding views and overall appearance of the '754 Patent. (Trial Exs. 12-13, 31-37, 85, 1004 and 1009.) The jury was also shown evidence (Trial. Ex. 12, Tab 1, Bates No. BERO 0532.) and heard testimony from Denis Gleason ("Gleason), the president and CEO of Nordock, that the 6-foot leveler and the middle 6-foot portion of the 6½- and 7-foot levelers are the same. (Opp'n to Systems' Mot. Alter or Amend, Ex. A (Gleason Trial Tr.) 4:19 to 5:9.) (ECF No. 189-1.) This is because the three different widths of levelers are made on the same welding fixture. One set of fixtures is used for "the entire range of dock leveler sizes and capacities" for a particular model. (Gleason Trial Tr. 3:14-16). Thus, the middle 6-foot portion of a 7-foot wide leveler is identical to a 6-foot leveler. (Gleason Trial Tr. 4:24-25 and Tr. 6:3-9). Systems offered no evidence to the contrary, and the jury could reasonably infer from the use of the same welding fixtures that there is no significant difference between the 6-, 6½- and 7-foot wide levelers.

Systems' brochures showed 6- and 7-foot LHP/LHD levelers, but not its 6½-foot levelers. (*See* Trial Exs. 12-14.) In addition, Nordock and other manufacturers had brochures showing their 6- and 7-foot levelers (*See* Trial Exs. 1-11), and none of them showed a 6½-foot leveler. The jury could reasonably infer from the omission of

the 6½-foot leveler from Nordock's, Systems' and third party brochures that the 6½-foot levelers are substantially similar to the 6- and 7-foot levelers.

Circumstantial evidence can support a finding of infringement. *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1362 (Fed. Cir. 2006) (citing *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding that circumstantial evidence of extensive sales and dissemination of an instruction sheet can support a finding of direct infringement by the customer); *Alco Standard Corp. v. Tenn. Valley Auth.,* 808 F.2d 1490, 1502–03 (Fed. Cir. 1986) ("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive.")). Thus, the Court concludes that a reasonable basis exists to support the jury's verdict of infringement with respect to the 6½-foot dock levelers. Systems' motion for Rule 59 relief is denied.

**Nordock**

Nordock seeks amendment of the judgment pursuant to Rule 59(e) to include 35 U.S.C. § 289 damages resulting from Systems' unauthorized infringement of the '754 Patent or, in the alternative, a new trial on damages. Nordock contends that the jury verdict failed to compensate Nordock for its § 289 damages. Nordock also requests an award of pre- and post-judgment interest as sought by its Complaint.

*Damages*

With respect to damages in patent cases, regional circuit law applies to procedural issues and Federal Circuit law applies to substantive and procedural issues

"pertaining to patent law." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1318 (Fed. Cir. 2010) (citing *Aero Prods. Int'l,* 466 F.3d at 1016; *see also Fiskars, Inc. v. Hunt Mfg. Co.,* 279 F.3d 1378, 1381 (Fed. Cir. 2002) (noting that Federal Circuit law controls "the distinctive characteristics of patent damages law")).

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." *Catalina Lighting, Inc. v. Lamps Plus, Inc.,* 295 F.3d 1277, 1289 (Fed. Cir. 2002) (quoting 35 U.S.C. § 284 (1994)). A design patentee may recover damages under 35 U.S.C. § 284 or under 35 U.S.C. § 289, entitled "Additional remedy for infringement of design patent," which states:

> Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.
> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

*Id.* at 1290.

A reasonable royalty is the statutory floor for damages in an infringement case. *See* 35 U.S.C. § 284. *Versata Software, Inc. v. SAP Am., Inc.,* 717 F.3d 1255, 1267

(Fed. Cir. 2013) cert. denied, 134 S. Ct. 1013 (2014). A reasonable royalty may be calculated using one of two baselines: "an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Id*. (citations omitted). "The hypothetical negotiation seeks to determine the terms of the license agreement the parties would have reached had they negotiated at arm's length when infringement began." *Id.*

Nordock's motion is denied because the jury reasonably based its verdict on the evidence presented. The jury received extensive damage instructions. (Jury Instructions, 39-50.) (ECF No. 166.) It was instructed that it could award Nordock compensatory damages in the form of its own lost profits or a reasonable royalty, or it could recover Systems' profits as a measure of potential recovery with respect the sale of each unit of an infringing product. (*Id*. at 39.) The jury was also informed that Nordock was entitled to recover no less than a reasonable royalty (*Id*. at 40) and instructed: "[i]n determining a reasonable royalty, you should assume that Nordock would have been willing to allow System [sic] to make; use; or sell *the patented invention* and that Systems would have been willing to pay Nordock to do so. (*Id*. at 49.) (Emphasis added.)

The jury heard testimony from Nordock's damages expert, Dr. Stan V. Smith ("Smith"), and Systems' damages expert, Richard Bero ("Bero"). Smith testified that Systems' profits on the sale of the infringed lug and pin design were $845,954. (*See also* Trial Ex. 49.) Bero testified that because Nordock had not established that it

incurred lost profits, they were not applicable damages. (*See e.g*. Bero Trial Tr., 14-15) (ECF 178.) Bero also testified that royalty was the proper form of damages, that $15 per allegedly infringing dock lever was the appropriate amount of royalty, and that, based on the 6,000 accused units, total damages were about $91,650. (*Id*. at 69.) Alternatively, according to Bero, Systems' profit on the accused products was less than $15 per unit, so lost profits would have been less than $91,650. (*Id.*) Although the jury heard testimony regarding lost profits, it chose to award a reasonable royalty. The jury was free to discredit Smith's testimony regarding Nordock's lost profits or find that Bero's testimony was more convincing and persuasive.

After finding that half of the accused products (the LHP and LHD levelers) were infringed upon, the jury made an approximate calculation of half the amount of reasonable royalties to which Bero had testified, and awarded that sum. The jury's verdict was consistent with the instructions, and a reasonable basis exists in the testimony and evidence presented at trial to support the jury verdict.

*Interest*

Nordock also seeks an award of prejudgment and post-judgment interest. Nordock seeks an award of $69,288 in prejudgment interest for May 2009 through March 2013 on its claimed lost profits of $845,954. Nordock's calculations are based on the corporate composite bond rate with monthly compounding. Nordock has provided charts showing prejudgment interest amounts based on the corporate composite bond rate, the prime rate, and variations of the prime rate. (Ex B to

Nordock's Mem. Amend. J.) (ECF No. 181-2.)  Systems did not respond to the interest portion of Nordock's motion.

Under 35 U.S.C. § 284, prejudgment interest ensures adequate compensation for the infringement.  *Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed. Cir. 1996) (citing *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 655-56 (1983); *Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1389, (Fed. Cir. 1983)).  Prejudgment interest has no punitive, but only compensatory, purposes.  *Id.*  Interest compensates the patent owner for the use of its money between the date of injury and the date of judgment.  *Id.*  The question of the rate at which such an award should be made is a matter left to the sound discretion of the trier of fact.  *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1580 (Fed. Cir. 1988).  The question of whether it is appropriate to compound prejudgment interest is also a matter within a district court's discretion.  *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 557 (Fed. Cir. 1984).

Nordock indicates that if it had to borrow money it would have been required to pay at least the corporate composite bond rate.  Nordock also states that it typically re-invests its profits into the company.  Nordock's requests are not outside the parameters of rates or compounding that have been allowed by district courts.  Thus, as a matter of discretion, the Court will allow Nordock to recover prejudgment interest from May 2009 through March 2013 at the corporate composite bond rate compounded monthly.  However, such interest will be calculated on the damage

award amount of $46,825.

Nordock also requests post-judgment interest. As noted in *Transmatic, Inc. v. Gulton Indus., Inc.,* 180 F.3d 1343, 1347 (Fed. Cir. 1999), 28 U.S.C. § 1961, the post-judgment interest provision states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment." *Id.* (quoting 28 U.S.C. § 1961). An award of post-judgment interest is required by § 1961. *Transmatic* held that the determination of the correct dividing line for calculating pre- and postjudgment interest is governed by regional circuit law and § 1961 because it is not a question unique to patent law. *Id*. at 1347-48.

Nordock's motion requests amendment of the judgment to include an award of post-judgment interest. However, *Goodwall Const. Co. v. Beers Const. Co.,* 991 F.2d 751, 759 (Fed. Cir. 1993) and *Mathis v. Spears,* 857 F.2d 749, 760 (Fed. Cir. 1988), cases cited by Nordock in support of its request, do not address whether the award of post-judgment interest should be included in the judgment and whether regional or circuit law applies to the issue. The Court's research did not disclose any decisions of the Federal Circuit Court of Appeals addressing the issues. However, the composition of a judgment is not an issue unique to patent cases. *See Transmatic*, 180 F.3d at 1347-48. Therefore, this Court will apply regional circuit law.

The Court of Appeals for this circuit has observed, "[c]ivil litigants who win money judgments in district courts are entitled to post judgment interest" by statute.

Consequently, a judgment awarding post-judgment interest is redundant. *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.,* 31 F.3d 587, 591 (7th Cir. 1994).

Based on the foregoing, while Nordock is entitled to and has been paid some post-judgment interest (*see* Systems Tender to Nordock of Satisfaction of J. [ECF No. 193]), in accord with the case law of this circuit the judgment will not be amended to provide for post-judgment interest. Nordock's Rule 59(e) motion is granted as to prejudgment interest in the amount of $10,170.09 and its entitlement to post-judgment interest and denied in all other respects.

## Motions for an Order to Show Cause

Although each party requests an order to show cause regarding contempt, neither party addresses the law relating to contempt proceedings. Regional circuit law governs contempt proceedings that do not raise issues unique to patent law." *Energy Recovery, Inc. v. Hauge,* 745 F.3d 1353, 1356 (Fed. Cir. 2014) (citing *Schaefer Fan Co., Inc. v. J & D Mfg.,* 265 F.3d 1282, 1289 (Fed. Cir. 2001)). The proponent of the civil contempt motion has the following burden:

> To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v.*

*Nat'l Spiritual Assembly of Baha'is of U.S., Inc.,* 628 F.3d 837, 847 (7th Cir. 2010) (quoting *S.E.C. v. Hyatt,* 621 F.3d 687, 692 (7th Cir. 2010)).[1] Additionally, with respect to non-parties, the movant has the burden of showing that the non-parties were bound by the injunction. *Id.*

*Systems' Request*

Systems seeks an Order directing Nordock to show cause why it should not be held in contempt for: (1) misrepresenting the terms of the Court's March 27, 2013,[2] injunction to Systems' distributors, (2) harassing Systems' distributors by falsely accusing them of being in violation of that injunction and demanding information from them; and (3) interfering with Systems' business relationships with its distributors. Systems provides copies of six letters sent by Nordock. (Pilgrim Decl., Exs. A-F.) (ECF Nos. 198, 198-1 to 198-6.) The company names of the six distributors to whom Nordock sent letters include the name "Fairborn."

The six letters are similar in content. Each states that the Court has permanently enjoined Systems from selling its infringing LHP and LHD dock levelers, that a copy of the Court's order and the patent are enclosed, and informs the distributor that the order is binding on them. The letter also asserts that the distributor continues

---

[1] *S.E.C. v. First Choice Management Services, Inc.*, 678 F.3d 538, 544-45 (7th Cir. 2012), questioned the use of the clear and convincing standard in civil contempt, but declined to try to solve that "puzzle." Absent further binding decisions on the issue, the clear and convincing standard remains applicable.

[2] The Court has corrected System's typographical error. 2013 is the year the injunction issued.

to offer the infringing LHP leveler, encloses copies of "Fairborn's website pages" listing the infringing LHP leveler, demands that the distributor confirm in writing that the information has been or will be promptly removed from the website. Lastly, the letter requires the distributor to provide information regarding any post-March 27, 2013 LHP leveler sales, shipments, and customer requests, regardless of whether or not sales were made.

The injunction issued in this case states, "Systems, Inc., is **PERMANENTLY ENJOINED** from making, using, selling or importing its LHP and LHD Series dock levelers." (J.) (ECF No. 171.) The injunction does not require that Systems give notice of the injunction. The injunction does not bar any conduct by Nordock.

Nordock could have contacted Systems with its concerns about the distributors or sought modification of the permanent injunction to require that Systems give notice of the injunction to its distributors. While Nordock had options other than its direct contact with Systems' distributors, it is not in violation of any command of the injunction. Furthermore, Nordock's inclusion of the judgment provided the distributors with the exact provisions of the injunction.

Systems has not shown that the alleged contemnor, Nordock, violated an unambiguous command of the injunction. *See Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 847. Thus an order to show cause against Nordock for misrepresenting the injunction and wrongfully contacting Systems' distributors is not warranted. Based on the foregoing, Systems' request for an order to show cause is denied.

*Nordock's Counter-Request*

Nordock's counter-motion asserts that the Court should issue an order to show cause why Mike Pilgrim ("Pilgrim"), an officer and owner of Systems, Fairborn USA and Fairborn Equipment, should not be held in contempt of the Court's permanent injunction. It asserts that Systems and Pilgrim used their longstanding relationship with Fairborn USA and Fairborn Equipment to continue "marketing" the infringing LHP levelers by Exhibit H to its motion, a printout of material posted on the website of "Fairborn Equipment Company Inc." that shows five categories of information regarding the LHP levelers: literature; spec sheets; pit details; architectural details; and the owner's manual.

Pilgrim is responsible for marketing dock levelers manufactured by Systems. Pilgrim has a longstanding relationship with the two Fairborn companies and is an officer of both companies. With respect to Exhibit H, Gleason avers that the first four categories listed would be used only for marketing the infringing LHP dock levelers and not for anything else. (Gleason Decl. dated June 20, 2014, ¶ 5.) (ECF No. 205-1.)

Because Nordock seeks an order to show cause against three non-parties, the first issue is whether the injunction is binding on Pilgrim Fairborn USA and Fairborn Equipment. Rule 65(d) of the Federal Rules of Civil Procedure, which governs injunctions and temporary restraining orders, codifies both the general principle that an injunction binds only the parties, and the exceptions to that principle. *Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 847. The Rule provides: "(2) Persons Bound. The

order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2).

By its terms Rule 65(d) makes injunctions binding on the parties to the underlying action and their "officers, agents, servants, employees, and attorneys," even if those "officers, agents," etc. are not named as parties to the litigation, provided that they have actual notice of the injunction by personal service or otherwise. Fed. R. Civ. P. 65(d)(2)(B). This is based on the idea that "[a]n order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents." *Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 848 (citation omitted). Thus Pilgrim, an officer of Systems who had actual notice of the injunction, is bound by the injunction. Pilgrim was also an officer of Fairborn USA and Fairborn Equipment, and he knew or should have known about exhibit H. (*See* Gleason Decl. ¶ 6.) Thus, Fairborn USA and Fairborn Equipment are arguably bound by the injunction. *See Nat'l Spiritual Assembly of Baha'is,* 628 F.3d at 848.

However, the injunction prohibits Systems from making, using, selling or importing its LHP and LHD Series dock levelers. Neither Fairborn USA nor Fairborn Equipment make, use, sell, or import Systems' LHP and LHD Series dock levelers. The uncontroverted declarations of Pilgrim and Edward McGuire ("McGuire"), Systems' president, also establish that upon hearing the jury's verdict, the two men

immediately contacted Systems' manufacturing personnel and instructed them to substitute a piano-style hinge for the lug-hinge structure in all LHP and LHD levelers to be manufactured and/or shipped from that date forward. (ECF Nos. 197 & 198.) McGuire and Pilgrim also contacted buyers who had placed orders for LHP or LHD levelers and informed them that the levelers they had ordered would be supplied, at no extra cost, with piano-style hinges rather than lug-style hinges. Furthermore, at no time between March 26, 2013, and the May 2, 2014, date of the declarations has Systems made, sold, offered for sale or shipped an LHP or LHD leveler having a lug-style hinge. Since March 26, 2013, every LHP and LHD leveler made, sold, offered for sale or shipped has included a piano-style hinge rather than a lug-style hinge. Furthermore, Pilgrim has not made, used, sold, or imported Systems' LHP and LHD Series dock levelers.

In its own filings Nordock stated that the first four categories of documents shown in Exhibit H could only be used for marketing, but Nordock has not shown that the injunction unambiguously prohibits marketing. As such, Nordock has not shown that any of the alleged contemnors, Pilgrim, Fairborn USA, and Fairborn Equipment, violated an unambiguous command of the injunction. *See id* at 847. Therefore, Nordock's motion for an order to show cause why Pilgrim, Fairborn USA, and/or Fairborn Equipment should not be held in contempt is denied. Additionally, the Court notes that according to a January 23, 2014, letter from outside counsel to Fairborn USA and Fairborn Equipment, the "infringing material" was ordered removed from

Fairborn Equipment's website. (ECF No. 199-10.)

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Systems' Rule 59(e) motion (ECF No. 179) is **DENIED**;

Nordock's Rule 59(e) motion (ECF No. 180) is **GRANTED** with respect to pre-judgment interest in the amount of $10,170.09 and its entitlement to post-judgment interest under 28 U.S.C. § 1961, and **DENIED** in all other respects;

The Clerk of Court is **DIRECTED TO ENTER** an amended judgment stating that Nordock shall recover $10,170.09 from Systems in prejudgment interest;

Systems' motion for an order to show cause (ECF No. 195) is **DENIED**; and

Nordock's motion for an order to show cause (ECF No. 199) is **DENIED.**

Dated at Milwaukee, Wisconsin, this 31st day of July, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**