# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NORDOCK, INC.,**

        Plaintiff,

v.                                    Case No. 11-CV-118

**SYSTEMS, INC.,**

        Defendant.

# DECISION AND ORDER

## I.  Facts and Procedural History

Nordock, Inc. holds a design patent regarding a "lip and hinge plate for a dock leveler." U.S. Patent No. D579,754 (the 'D754 Patent). When a semi-trailer is backed into a loading dock, a dock leveler bridges the gap between the floor of a loading dock and the bed of a semi-trailer. (ECF Nos. 258-1, ¶ 5; 221 at 17.) A dock leveler allows people and equipment such as forklifts to easily pass between the building and the trailer when loading or unloading cargo onto or from the trailer. (*Id.*)

The lip and hinge plate is the portion of the dock leveler that actually spans any gap between the building and the trailer and makes contact with the trailer bed. (*See* ECF Nos. 164 at 12, 13, 22-23, 64; 221 at 15.) When not in use, the lip normally hangs

down perpendicular to the deck of the dock leveler; when in use, it comes up to be generally parallel with the deck. (ECF No. 164 at 23.)

Nordock filed this action alleging that Systems, Inc. was selling products that infringed the 'D754 Patent. On March 26, 2013, the jury returned a verdict in favor of Nordock. (ECF No. 172.) Concluding that Systems had no profit on the sales of its infringing dock levelers, the jury awarded Nordock $46,825 as a reasonable royalty. (ECF No. 172 at 3.)

Both sides appealed. The Court of Appeals for the Federal Circuit concluded that there was no evidence to support the jury's conclusion that Systems did not have any profit on the sales of its infringing dock levelers, *Nordock, Inc. v. Sys., Inc.*, 803 F.3d 1344, 1356 (Fed. Cir. 2015), and remanded the matter for a new trial on damages. *Id.* The Federal Circuit stated that at that new trial damages under 35 U.S.C. § 289 must be based on the profit from the sale of the entire dock leveler and not just the profit attributable to the lip and hinge plate. *Nordock,* 803 F.3d at 1355.

The United States Supreme Court granted Systems's request for review, summarily reversed, and remanded the case to the Federal Circuit in light of its recent decision in *Samsung Elecs. Co. v. Apple Inc.*, 137 S. Ct. 429, 196 L.Ed.2d 363 (2016). *Sys., Inc. v. Nordock, Inc.*, 137 S. Ct. 589, 196 L.Ed.2d 471 (2016).

In *Samsung* Apple alleged that Samsung infringed its design patents for mobile phones. The design patents covered "a rectangular front face with rounded edges and a

grid of colorful icons on a black screen." *Id.* at 431. A jury found that several Samsung smartphones infringed Apple's design patents and awarded Apple nearly $400 million in damages--the entire profit Samsung made from its sales of the infringing smartphones.

On appeal Samsung argued "that the profits awarded should have been limited to the infringing 'article of manufacture'" (for example, the case of the Samsung smartphone) and not the entire smartphone. *Apple Inc. v. Samsung Elecs.Co.*, 786 F.3d 983, 1002 (2015). The Federal Circuit rejected that argument, reasoning that limiting the damages award in this manner was not appropriate because the "innards of Samsung's smartphones were not sold separately from their shells as distinct articles of manufacture to ordinary purchasers." *Id.*

The Supreme Court disagreed with the Federal Circuit's conclusion that the article of manufacture must always be the product sold to consumers. It concluded that the term "article of manufacture" as used in § 289 "encompasses both a product sold to a consumer and a component of that product." *Samsung*, 137 S. Ct. at 434. However, the Supreme Court did not articulate how a court is to identify the "article of manufacture."

Following the Supreme Court's decision remanding *Nordock* to the Federal Circuit, *Systems*, 137 S. Ct. 589, the Federal Circuit in a brief per curiam opinion remanded the case to this court for a new trial on damages. *Nordock, Inc. v. Sys., Inc.*, 681 F. App'x 965 (Fed. Cir. 2017). The Federal Circuit stated, "The trial court will also

have the opportunity to consider the parties' arguments with respect to the relevant 'article of manufacture' in the first instance." *Id.* at 966.

Following the death of the prior presiding judge, the case was randomly assigned to this court. All parties consented to this court's jurisdiction. Thus, it is now for this court to decide how the article of manufacture should be determined. The issue comes before the court on the parties' cross motions for partial summary judgment.

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law'" and "'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The burden on the moving party may be discharged by demonstrating 'that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

In support of its motion for summary judgment Nordock submitted 75 proposed findings of fact (ECF No. 258-1) supported by voluminous documentation (ECF Nos. 258-3 — 261-15; 268-1 — 268-9; 266-1 — 266-3). Systems requested "that it be relieved from responding to each of Nordock's proposed statements of fact at this time and that, if the Court believes Nordock's statements are material or otherwise potentially dispositive, it be given a meaningful opportunity to depose these witnesses before responding specifically and individually to each of these statements under Local Rule 56(b)(2)(B)." (ECF No. 269 at 11.) Given the posture of this case and the context of the present dispute, where the foremost issue is determining the test that should apply for identifying the article of manufacture, the court grants this unusual request. Many of Nordock's proposed findings of fact are not material. Others are not properly proposed findings of fact but rather represent legal conclusions. And others are not properly supported by appropriate citations. Of those material proposed findings of fact that are properly presented, the court does not find that any is reasonably subject to dispute. Therefore, as referenced below, the court will consider certain of the relevant proposed findings of fact for purposes of this motion.

III. Analysis

    a. Burden

Systems argues that, in the absence of clarification from the Supreme Court or the Federal Circuit as to which party bears the burden of proof on what constitutes the

article of manufacture, "the ordinary rule that a plaintiff bears the initial burden of proof on all issues, including the issue of damages, should not be disturbed." (ECF No. 262 at 9.) Nordock argues that it should be presumed that the article of manufacture is the product that is sold, and the burden should be placed on the alleged infringer to prove that the article of manufacture is something less than the entire product. (ECF No. 258 at 18.)

The parties refer to the "burden of proof," but that term can encompass both the burden of persuasion and the burden of production. *Cf. Director v. Greenwich Collieries*, 512 U.S. 267, 272 (1994). For the sake of clarity, the court will refer to these concepts separately.

The plaintiff normally bears the burden of persuasion on all issues, including damages. *See Schaffer v. Weast*, 546 U.S. 49, 56 (2005); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). The identification of the article of manufacture is part and parcel to damages under § 289. Thus, the court concludes that the plaintiff bears the burden of persuasion with respect to identifying the article of manufacture and proving the defendant's total profit from that article of manufacture. *Apple*, 2017 U.S. Dist. LEXIS 177199, at *90.

However, once the plaintiff meets its initial burden of production with respect to the article of manufacture and the defendant's total profit on that article, if the

defendant contends that the article of manufacture is something else, the defendant has the burden to produce evidence as to this alternative article of manufacture. The defendant also has the burden to produce evidence as to any deductions it believes are appropriate from the total profit identified by the plaintiff. *Apple*, 2017 U.S. Dist. LEXIS 177199, at *96-97 (citing *Henry Hanger & Display Fixture Corp. of Am. v. Sel-O-Rak Corp.*, 270 F.2d 635, 643 (5th Cir. 1959); *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333, 341 (S.D.N.Y. 2003) *vacated in part on other grounds*, 90 F. App'x 543 (Fed. Cir. 2004) (unpublished); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476, 497 (D. Minn. 1980).

Although § 289 does not explicitly impose any burden on the defendant, this shift in the burden of production is consistent with the disgorgement of profits in other contexts. *See SEC v. First City Fin. Corp.*, 281 U.S. App. D.C. 410, 890 F.2d 1215, 1232 (1989); *SEC v. Teo*, 746 F.3d 90, 112 (3d Cir. 2014) ("When the SEC comes forward with a reasonable approximation of tainted profits, the burden of production then shifts to the defendant to produce evidence showing that all or some part of the sum in question should not be subject to disgorgement."). Similar burden shifting is countenanced with respect to lost profits under § 284. *See Apple*, 2017 U.S. Dist. LEXIS 177199, at *95 (discussing *Micro Chem., Inc. v. Lextron*, Inc., 318 F.3d 1119, 1122 (Fed. Cir. 2003)).

Moreover, this shift in the burden of production is appropriate because, as the United States noted when endorsing this approach as amicus curiae in *Samsung*:

> The defendant, as the manufacturer or seller of the accused product, has superior knowledge of the identity of the product's components, as well as of some of the factors relevant to the "article" determination, including the physical relationship between the design and the product; the manner in which the product is manufactured; and the extent to which the product reflects the innovations of parties other than the plaintiff. See *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 494 n.17 (2004) (placement of burden of production may turn on which party has "peculiar means of knowledge" of the facts in question) (citation omitted); accord *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 851 (2014).

*Samsung Electronics Co., Ltd. v. Apple Inc.*, Brief for the United States as Amicus Curiae Supporting Neither Party, 2016 WL 3194218, 30-31, 2016 U.S. S. Ct. Briefs LEXIS 2322, 50-51 (hereafter, Amicus).

In sum, the court finds that the approach taken by the district court on remand in *Samsung* is correct.

> The plaintiff bears the burden of persuasion in proving the relevant article of manufacture and in proving the amount of defendant's total profit under § 289. The plaintiff also bears an initial burden of production on both of these issues. However, once the plaintiff satisfies its initial burden of production, the burden of production shifts to the defendant to come forward with evidence to support any alternative article of manufacture and to prove any deductible expenses.

*Apple*, 2017 U.S. Dist. LEXIS 177199, at *98-99.

### b. Method for Identifying the Article of Manufacture

In *Samsung* the United States as amicus curiae proposed a four factor test for purposes of determining the article of manufacture: (1) the scope of the design claimed in the patent, including the drawing and written description; (2) the relative

prominence of the design within the product as a whole; (3) whether the design is conceptually distinct from the product as a whole; and (4) the physical relationship between the patented design and the rest of the product. Amicus at 27-29; 2016 U.S. S. Ct. Briefs LEXIS 2322 at 46-48. Systems argues that the court should apply this test. (ECF No. 262 at 6.)

Nordock contends that the "totality of the circumstances" test crafted by the United States is ineffective when applied to products that, unlike mobile phones, do not perform a broad range of functions. (ECF No. 258 at 21.) It argues that the analysis should begin with a presumption that the article of manufacture is the entire product sold by the infringer; a totality of the circumstances test should be applied only if certain threshold questions indicate that it is appropriate. (ECF No. 258 at 20-25.)

If a totality of the circumstances test is appropriate, Nordock proposes considering a far broader list of factors: whether the design patent identified the finished product to which it applied; whether the design element was sold as part of a larger, complete product; whether the design is seen together with other components when offered for sale; whether the infringer prominently displayed the design element in its sales materials; whether the portion to which the design element applied was necessary to perform the intended purpose of the overall product; whether the overall product performed a broad range of functions; whether the portion to which the design element applied was sold separately from the overall product; whether the design

patent referred to other patents for the overall product; whether the design patent is a continuation of a utility patent claiming the entire overall product; whether a designer would need to consider the overall product to apply the design element; whether the infringer was aware of the design patent before it began selling the infringing product; whether it is possible to accurately identify the infringer's profits from the overall product; and whether it is possible to accurately identify the infringer's profits from the portion of the overall product to which the design element applied. (ECF No. 258 at 26-30.)

>Nordock's position rests in part on a misreading of § 289. Section 289 states:

>Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $ 250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289. Nordock contends that the phrase "for the purpose of sale" describes the "article of manufacture," suggesting that the article of manufacture is whatever is sold. (ECF No. 258 at 16.) Aside from the fact that this is essentially the conclusion rejected by the Supreme Court in *Samsung*, the phrase "for the purpose of sale" does not modify "article of manufacture" but rather modifies the entire phrase, "applies the patented design…to any article of manufacture[.]" Thus, it describes what a person must do to violate § 289. A person who, without license, "applies the patented design

… to any article of manufacture" but does not do so "for the purpose of sale" does not violate § 289.

Nor does § 289's reference to the infringer's "total profit" suggest that the article of manufacture must be the entire product as sold to a consumer. (*Cf.* ECF No. 258 at 16.) The only reasonable reading of § 289 is that "total profit" refers to all of the profit from the sale of the article of manufacture, irrespective of whether the article of manufacture is the entire product or only a component of it. If only a component is the article of manufacture, profit from that component is not somehow less than the "total profit" referenced in the statute simply because it does not also include profit from other components.

Identifying the article of manufacture as a component that is never sold separately from the entire product admittedly raises certain of the practical evidentiary problems that spurred Congress's reaction to *Dobson v. Hartford Carpet Co.*, 114 U.S. 439, 445 (1885), and led to the enactment of § 289. But *Samsung* does not represent a resurrection of *Dobson* and a return to the apportionment scheme Congress rejected.

Courts have long recognized that patent holders may have a difficult time identifying the profits subject to disgorgement when the design is applied to an article of manufacture that is not independently offered for sale. *See Bush & Lane Piano Co. v. Becker Bros.*, 234 F. 79, 83 (2d Cir. 1916) (discussing method for assessing profits related to a component); *see also id.* at 85 (Ward, J., dissenting) (referring to method for

determining profits "purely arbitrary" and concluding that, because plaintiff cannot prove the infringer's profits, plaintiff should receive only the $250 statutory award); *Young v. Grand Rapids Refrigerator Co.*, 268 F. 966, 974 (6th Cir. 1920) (concluding that, despite an inability to prove profits associated with the handle to which the patented design element was applied, the patent holder was not entitled to recover all profits earned by defendant as a result of sales of refrigerators to which the infringing handles were attached).

But the court rejects the notion that difficulties a patent holder might have in identifying profits from something less than the entire product, by itself, supports the conclusion that the entire product is the article of manufacture. It is true that some of the factors that are relevant in determining what is the article of manufacture might be the same as those that lead to difficulties in identifying the profits from a component. But if the obstacle is so great as to generally deny patent holders the relief that Congress intended in enacting § 289, it is up to Congress to amend the law, just as it did in response to *Dobson*. Or Congress could conclude the scheme is unworkable and eliminate disgorgement of an infringer's profits as a remedy, as it did in 1946 with respect to utility patents, *see* 1-23 Chisum on Patents §§ 20.02[4], 23.05[1][d][vi] (2017). But these issues have been noted by courts for decades and Congress has not yet intervened.

Importantly, the holder of a design patent is not limited to § 289 for relief. Thus, evidentiary hurdles in proving profit from a component do not foreclose relief. A patent holder may alternatively seek relief under § 284—for example, in the form of its lost profits or a reasonable royalty. *See, e.g., Catalina Lighting v. Lamps Plus*, 295 F.3d 1277, 1290 (Fed. Cir. 2002); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 n.16 (Fed. Cir. 1992); *Sel-O-Rak Corp. v. Henry Hanger & Display Fixture Corp.*, 159 F. Supp. 769, 776 (S.D. Fla. 1958). Damages under § 284 (but not § 289) may then be tripled by the court. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992).

The court finds that the four-factor test proposed by the United States as amicus in *Samsung* is appropriate, consistent with the relevant statutory law, and supported by the case law. The factors identified by Nordock are often inconsistent with *Samsung* or are not helpful in identifying the article of manufacture. Nordock is largely arguing that the Supreme Court's holding in *Samsung* is limited to products that perform a broad range of functions. Although smartphones were at issue in *Samsung,* and the Supreme Court acknowledged the broad range of functions they perform, nothing in the Court's decision suggests that its holding was limited to such multi-functional products. This error affected many of the arguments Nordock offered as to the propriety of its proposed factors.

However, although the court rejects the factors proposed by Nordock, the court does not believe that the four factors proposed by the United States and by Systems will

always be the *only* factors relevant to determining the article of manufacture. As the Court of the Appeals for the Second Circuit recognized when confronting this issue over 100 years ago, each case presents its own problems and it might not be possible to articulate factors that will apply in every instance. *Bush & Lane Piano Co.*, 234 F. at 81. Rather, each design patent must be considered in context and "considered from all viewpoints, technical, mechanical, popular, and commercial." *Id*.

In identifying an "article of manufacture," it would seem obvious that a significant factor would be *how* the product is manufactured. The United States repeatedly noted the significance of this factor and perhaps intended it to be encompassed within its fourth factor regarding the physical relationship between the portion of the product to which the design applies and the whole product. *See* Amicus at 29, 2016 U.S. S. Ct. Briefs LEXIS 2322 at 48 (discussing the fourth factor and stating that a relevant consideration is whether "the design is embodied in a component that is manufactured separately from the rest of the product"). In its "summary of argument" the United States explicitly stated that one of the considerations relevant to determining the article of manufacture is "the manner in which the components were manufactured." Amicus at 9, 2016 U.S. S. Ct. Briefs LEXIS 2322 at 18; *see also* Amicus at 31, 2016 U.S. S. Ct. Briefs LEXIS 2322 at 51 (noting that defendant should have the burden of producing evidence as to the relevant article of manufacture in part because it has superior knowledge of "the manner in which the product is manufactured");

Amicus at 32-33, 2016 U.S. S. Ct. Briefs LEXIS 2322 at 53 (arguing remand is appropriate in part because petitioner had not "identified record evidence or argument concerning other factors, such as … the manner in which the components were manufactured").

A finished product might appear to be a unitary structure, but if considered in light of how it was manufactured it might be recognizable as a collection of components. Or vice versa. Facts relating to the manufacturing process might be otherwise relevant in a myriad of ways to identifying the article of manufacture. Therefore, the court concludes that how a product is manufactured merits explicit consideration as a factor when attempting to determine what is the relevant article of manufacture.

### c. Identifying the Article of Manufacture

Identifying the article of manufacture is generally for the jury. *See* Amicus at 9, 16, 25-28, 2016 U.S. S. Ct. Briefs LEXIS 2322 at 18, 28-29, 43-44, 46-48. But, as with other jury questions, summary judgment may be appropriate if there is no genuine dispute of material fact or if there is only one conclusion that a reasonable jury could reach. Upon reviewing the record as a whole, paying particular attention to the parties' present submissions, the court concludes it is unable to identify the article of manufacture. The question must be decided by the finder of fact.

The 'D754 Patent claims "[t]he ornamental design of a lip and hinge plate for a dock leveler …." Other dock levelers may have a lip and hinge plate but use a simple

tubular or piano hinge. (ECF Nos. 164 at 91; 230 at 25.) The 'D754 Patent claims a lip and hinge plate that uses what is often referred to as a lug hinge (*see* ECF Nos. 164 at 31; 222 at 11). According to Nordock's CEO, combining the open lug hinge with the header plate made Nordock's design unique. (ECF No. 230 at 60.) As depicted in Figure 1 of the 'D754 Patent, shown below, each lug hinge is comprised of a pair of elements, one attached to the lip and one attached to the hinge plate. A rod runs through the elements, allowing rotation along an axis. (*See also* ECF No. 258-5 at 23, 8:14-52 (description of dock leveler contained in U.S. Patent No. 6,834,409.)



The 'D754 Patent clearly states that the claimed lip and hinge plate is "for a dock leveler." The patent partially depicts the dock leveler. There is no evidence that Systems

ever sold an infringing dock leveler without a lip and hinge plate. (*See* ECF No. 258-1, ¶¶ 49-50.) Conversely, "there [is] no evidence that Systems sold a 'lip and hinge plate' separate from the leveler as a complete unit." *Nordock,* 803 F.3d at 1355. A dock leveler is generally unable to perform its intended function without a lip. (ECF No. 258-1, ¶¶ 17, 51; ECF No. 164 at 64.) And because it is welded to the dock leveler, repair or replacement of only the lip and hinge plate would be difficult or impractical. (ECF No. 258-1, ¶ 52.)

Nonetheless, in light of the Supreme Court's conclusions in *Samsung*, even accepting these facts as true does not *necessarily* mean that the entire dock leveler is the article of manufacture. Much more important in light of *Samsung* is the fact that the patented design element relates to only a portion of the overall product. Depicted here is a complete dock leveler. The lip and hinge plate constitutes only the uppermost segment.



(ECF No. 264, ¶ 8 (depicting Systems's infringing dock leveler).)

Although not readily physically severable because the components are welded together, *Nordock*, 803 F.3d at 1355, there is evidence in the record that the lip and hinge plate is conceptually distinct from the overall dock leveler. For example, Nordock's CEO testified that there are three main components to a dock leveler – the lower portion, called the frame; the "deck or the platform"; and the "front top section" or "the lip assembly." (ECF No. 230 at 15 (trial testimony of Nordock CEO); *see also* ECF No. 230 at 34 (same).) All components of the dock leveler must function together for it to perform its intended purpose. (*See* ECF No. 164 at 64 (testimony of Nordock CEO stating that a dock leveler would not work if any component were removed).) But that does not mean that it is not a system of conceptually distinct components in much the same way the components of an automobile are distinct but must work together to achieve the object's intended function.

The design element is relevant only to the lip and hinge plate; it has no relevance to any other component of the dock leveler. Nordock may have intended its hinge design to give the overall dock leveler a distinct look. (*See* ECF Nos. 164 at 65, 74; 230 at 15-16, 59-60.) But that does not make the entire dock leveler the article of manufacture, just as the distinct design of a piano case did not make the entire piano the article of manufacture, *Bush & Lane Piano Co. v. Becker Bros*, 222 F. 902, 904 (2d Cir. 1915).

The distinction between the lip and hinge plate and the rest of the dock leveler is evident in that the design patent depicted only the lip and hinge plate (it depicted a

fragment of the dock leveler in the form of broken lines only to show context of the lip and hinge plate, s*ee* U.S. Patent and Trademark Office, Manual of Patent Examining Procedure, § 1503.02). The patent expressly states that the portions depicted by broken lines "represent environmental structure in order to show the claim in a condition of use and form no part of the claimed design." 'D754 Patent.

As to how the object is manufactured, the court has not located in the record evidence as to Systems's manufacturing methods. There is, however, evidence that *Nordock* welds and paints each component separately before it assembles the complete dock leveler. (ECF No. 230 at 15; *see also* ECF No. 230 at 77-78 (description of Nordock's manufacturing process).) And there is some reason to suspect that a Systems dock leveler is manufactured in a similar manner. (*Cf.* ECF No. 230 at 79 (Nordock CEO's testimony that the two prior deck leveler manufacturers he worked for used a similar manufacturing process).) But the court finds it inappropriate at this stage to rely upon an assumption that Systems's manufacturing methods are the same as Nordock's.

Without knowing what the evidence might be, it is difficult to speculate how this factor might impact identifying what the article of manufacture is. Obviously, if the lip and hinge plate is manufactured as a single unit wholly distinct from any other portion of the dock leveler, such evidence would tend to support a conclusion that the lip and hinge plate is the article of manufacture. On the other hand, if Systems manufactures the lip and hinge plate in a process where there is no ready distinction from the other

aspects of the dock leveler, that would tend to support a finding that the entire dock leveler is the article of manufacture. Or a consideration of Systems's manufacturing processes might support a finding that neither Nordock nor Systems is correct and that something other than the entire dock leveler or merely the lip and hinge plate is the article of manufacture.

In light of this evidentiary gap, as well as the general notion that determining the article of manufacture is a question for the jury rather than the court, the court must deny both of the pending motions for summary judgment.

**IT IS THEREFORE ORDERED** that the motion of Nordock, Inc., as to the article of manufacture (ECF No. 257), is **denied**.

**IT IS FURTHER ORDERED** that the motion of Systems, Inc. as to the article of manufacture (ECF No. 263), is **denied**.

**IT IS FURTHER ORDERED** that the Clerk shall set this matter for a telephonic scheduling conference to discuss further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 21st day of November, 2017.

WILLIAM E. DUFFIN
U.S. Magistrate Judge